# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| LEMUEL FREEMAN, | ) | CASE NO.  5:11cv881 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| CORRECTIONS OFFICER VARGAS, | ) | |
| et al, | ) | |
| | ) | |
| DEFENDANTS. | ) | |

 *Pro se* plaintiff Lemuel Freeman filed this *Bivens*[1] action against Northeast Ohio Correctional Center ("NEOCC") Corrections Officer Vargas; Corrections Officer Kather; Corrections Officer Bass; Counselor Payne; Unit Manager Delgado; the Assistant Warden; and the Warden. In his Amended Complaint, plaintiff alleges his First, Fourth and Fifth Amendment rights were violated when defendants conducted an allegedly illegal strip search of plaintiff in his cell. He seeks injunctive and monetary relief. (Doc. No. 3.)

## I. BACKGROUND

 Plaintiff is a federal prisoner and was incarcerated at NEOCC in Youngstown, Ohio when the events described in his Amended Complaint took place.[2] He contends that

---

[1] In *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971), the Supreme Court provided federal inmates and detainees with a cause of action analogous to that provided in 42 U.S.C. § 1983.

[2] Plaintiff states in his Amended Complaint that he is a "pre-sentenced" federal prisoner. A review of the docket in plaintiff's underlying federal criminal case indicates that plaintiff was indicted on one felony count on December 7, 2010, entered a guilty plea pursuant to a plea agreement on April 15, 2011, and was sentenced on July 6, 2011. *See United States v. Freeman*, Case No. 5:10-cr- 00511 (N.D. Ohio, J. Lioi) (Doc. Nos. 1, 23. 28.) The events that form the basis of plaintiff's Amended Complaint occurred on April 10, 2011, five days prior to the entry of his guilty plea. Accordingly, plaintiff is considered a pretrial detainee for purposes of this *Bivens* suit. He is currently incarcerated at Fairton-FCI in New Jersey.

NEOCC Officers Vargas and Kather strip searched him in his cell on April 10, 2011. Plaintiff alleges that Officers Vargas and Kather left the door to his cell open during the search, allowing other prisoners to witness the strip search. While the search was being conducted, plaintiff asked Officer Vargas why he was being strip searched in front of other prisoners and whether Vargas had the right to conduct such a search of plaintiff in his cell. Officer Vargas allegedly responded that he was permitted to do so and that plaintiff could "write it up" if he objected.  Plaintiff alleges his cell mate was also subjected to a similar strip search. (Doc. No. 3 at ¶¶ 3-6.)

Immediately after the search, plaintiff asked defendant Corrections Officer Bass whether it was NEOCC policy to allow Vargas and Kather to conduct a strip search of an inmate in his cell. Officer Bass allegedly stated that "he didn't know and was going to stay out of it." (Doc. No. 3 at ¶ 9.)

On April 15, 2011, plaintiff told defendant Counselor Payne that he had been strip searched in his cell and asked whether a corrections officer had the right to conduct a strip search in that manner. According to plaintiff, Counselor Payne stated that "an officer could be terminated for such actions, and if a strip search was to be conducted on a [...] prisoner, it would have to be ordered by the U.S. Marshalls [sic] and a prisoner would have to be taken away to a private area, such as medical [...] to conduct a search and a witness must be present the whole time." (Doc. No. 3 at ¶ 10.) Counselor Payne then obtained plaintiff's name and ID number and stated that she would have to report the incident.

Later that day, defendant Unit Manager Delgado called plaintiff and three other inmates down to fill out Informal Resolutions regarding the strip searches conducted by Officers Vargas and Kather. Plaintiff completed this grievance form and then returned repeatedly over the

following week to speak with Delgado. Plaintiff claims Delgado acted as if his grievance had never been filed and refused to give plaintiff another Informal Resolution form. (Doc. No. 3 at ¶ 13.)

Plaintiff asserts Officer Vargas was informed that plaintiff had filed a grievance about the strip search and thereafter pulled plaintiff outside and patted him down excessively. (Doc. No. 3 at ¶ 15.) Plaintiff filed a grievance against Vargas for this incident, and Vargas was apparently transferred to another unit. (Doc. No. 3 at ¶ 16.) Finally, plaintiff alleges he asked to speak with both the Warden and the Assistant Warden about the strip search incident. He claims his request was denied and he was threatened with segregation. (Doc. No. 3 at ¶ 17.)

Plaintiff filed a Complaint on May 24, 2011 against Vargas and Corrections Corporation of America ("CCA"), which owns and operates NEOCC. (Doc. No. 1.) He subsequently filed an Amended Complaint, which named Vargas and added defendants Kather, Bass, Payne, Delgado, the Warden and the Assistant Warden, but did not name CCA. (Doc. No. 3.)

## II.     STANDARD OF REVIEW

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[3] *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v.*

---

[3] An *in forma pauperis* claim may be dismissed *sua sponte*, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking § 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997); *Brooks v. Seiter*, 779 F.2d 1177, 1179 (6th Cir. 1985).

*City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007).

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal* , 129 S. Ct. 1937, 1949 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Bell Atl. Corp.*, 550 U.S. at 555. The plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing a complaint, the court must construe the pleading in the light most favorable to the plaintiff. *Bibbo v. Dean Witter Reynolds, Inc*., 151 F.3d 559, 561 (6th Cir.1998).

### III.    LAW AND ANALYSIS

#### A.    Proper Parties

As set forth *supra*, plaintiff named CCA as a defendant in his initial Complaint but not in the Amended Complaint. It is unclear from the pleadings whether plaintiff intended the Amended Complaint to supplement or to supersede his previous Complaint. While an amended complaint normally is deemed to supersede any previously filed complaint, this Court will give

plaintiff's *pro se* pleadings a liberal construction and assume for purposes of this Opinion that plaintiff intended to name CCA as a defendant in the instant case.

CCA, however, is not a proper party to a *Bivens* action. *Bivens* provides a cause of action only against individual officers acting under color of federal law who are alleged to have acted unconstitutionally. *Corr. Services Corp. v. Malesko*, 534 U.S. 61, 70 (2001). A *Bivens* action cannot be brought against a federal prison, the Bureau of Prisons, or the United States government. *Id*. CCA, which owns and operates NEOCC, is a private corporation. Because inmates housed in federal correctional institutions cannot bring an action against the prison or the government entity that operates the prison, the Supreme Court has declined to extend that cause of action to a private prison or the corporate entity that owns and operates it. *Id*. at 74. Accordingly, any claims asserted by plaintiff against CCA fail to state claims upon which relief may be granted and are subject to dismissal under § 1915(e).

Plaintiff's official capacity claims against defendants Vargas, Kather, Bass, Payne, Delgado, the Assistant Warden and the Warden must be dismissed as well. Plaintiff's official capacity claims are necessarily construed as claims against NEOCC and, thus, CCA. *See Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 690 n.55 (1978) ("Official capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."); *Dotson v. Wilkinson*, 477 F. Supp. 2d 838, 851-52 (N.D. Ohio 2007). Because claims against CCA are barred, plaintiff's claims against these defendants in their official capacities as agents of NEOCC (and, thus, CCA) are also subject to summary dismissal under § 1915(e).

Plaintiff also fails to state viable claims against the NEOCC Warden and Assistant Warden in their individual capacities. There are no allegations that either the Warden or the

Assistant Warden participated in, or were directly involved in or even aware of, the strip search at issue. To the extent plaintiff's claims against these defendants are based on their supervisory roles as Warden and Assistant Warden, these claims must fail. The theory of *respondeat superior* does not apply in *Bivens* suits to impute liability onto supervisory personnel. *See Shehee v. Lutrell*, 199 F.3d 295, 300 (6th Cir. 1999). To establish liability of a supervisor, a plaintiff must show, at a minimum, "that the official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* Such liability must be based on "active unconstitutional behavior" and cannot be based on the mere right to control employees. *Id.* A plaintiff must demonstrate that a supervisory defendant "did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on." *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999).

In the instant case, plaintiff has failed to set forth any allegations that the Warden or Assistant Warden engaged in any active unconstitutional behavior or implicitly authorized, approved or knowingly acquiesced in the strip search at issue. Accordingly, the Court finds that plaintiff's individual capacity claims against these defendants fail to state claims upon which relief may be granted and are subject to dismissal under § 1915(e).

Plaintiff's individual capacity claims against defendants Bass and Payne must also be dismissed. A plaintiff cannot establish the liability of any defendant absent a clear showing that the defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Mullins v. Hainesworth*, No. 95-3186, 1995 WL 559381 (6th Cir. Sept. 20, 1995). Neither the Complaint nor the Amended Complaint contains any facts which reasonably associate defendants Bass or Payne

with the strip search at issue. Plaintiff's only allegation relating to Officer Bass consists of Bass's alleged statement that he was not aware that plaintiff had been strip searched in his cell, and did not want to become involved in the situation. (Doc. No. 3 at ¶ 9.) There is no allegation that Officer Bass was involved in or present during the strip search. Further, there is no basis on which to attach liability to Officer Bass under a *respondeat superior* theory, as plaintiff does not allege that Officer Bass is a supervisor, that he engaged in any active unconstitutional behavior, or that he implicitly authorized, approved or knowingly acquiesced in the strip search at issue.

Similarly, plaintiff fails to set forth any allegation that Counselor Payne was personally involved in the allegedly unconstitutional strip search. Plaintiff alleges only that he asked Payne about the legality of the search and that Payne replied that all strip searches must be authorized by the U.S. Marshals and conducted in a private area in the presence of a witness. Plaintiff further alleges that Payne obtained his name and ID and reported the incident. As with defendant Bass, there is simply no indication that Payne was involved in the actual strip search at issue. Further, there is no basis for *respondeat superior* liability as plaintiff does not allege that Payne engaged in any active unconstitutional behavior or implicitly authorized, approved or knowingly acquiesced in the strip search. To the contrary, Payne allegedly indicated that the strip search was improper and reported it.

Accordingly, the Court finds that plaintiff's individual capacity claims against defendants Bass and Payne fail to state claims upon which relief may be granted and are subject to dismissal under § 1915(e). Plaintiff's remaining individual capacity claims against defendants Vargas, Kather and Delgado will be discussed, below.

### B.    First Amendment Claim

Plaintiff alleges generally that defendants violated his rights under the First Amendment. He does not explain either the factual or legal basis for this claim other than to cite generally to the First Amendment.

Principles requiring generous construction of *pro se* pleadings are not without limits. *See Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). A complaint must contain either direct or inferential allegations respecting all the material elements of some viable legal theory to satisfy federal notice pleading requirements. *See Schied v. Fanny Farmer Candy Shops, Inc*., 859 F.2d 434, 437 (6th Cir. 1988). District courts are not required to conjure up questions not squarely presented to them or to construct full blown claims from sentence fragments. *See Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985); *Crawford v. Crestar Foods*, No. 98-3144, 2000 WL 377349, at * 2 (6th Cir. Apr. 6, 2000). To do so would require the courts "to explore exhaustively all potential claims of a *pro se* plaintiff [... and] would transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett*, 775 F.2d at 1278. Moreover, a plaintiff's failure to identify a particular legal theory in his complaint places an unfair burden on defendants to speculate about the potential claims that a plaintiff may be raising against them and the defenses they might assert in response to each of these possible causes of action. *See Wells*, 891 F.2d at 594.

Even liberally construed, the Amended Complaint in the instant case fails to sufficiently specify a federal constitutional claim under the First Amendment against any of the remaining defendants-Vargas, Kather or Delgado. Accordingly, plaintiff's First Amendment

claim fails to state a claim upon which relief may be granted and is subject to summary dismissal under § 1915(e).

### C. Fourth Amendment Claim

Plaintiff appears to allege that Officers Vargas and Kather violated his Fourth Amendment right to be free from unreasonable search and seizure when they performed the strip search at issue. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause [...]." U.S. CONST. amend. IV. While inmates retain some limited Fourth Amendment rights upon commitment to a correctional facility, those rights have to be balanced with the significant and legitimate security interests of the prison. *See Bell v. Wolfish*, 441 U.S. 520, 560 (1979) (finding that visual body-cavity searches of pretrial detainees was reasonable). A strip search, therefore, will survive a Fourth Amendment challenge so long as it is reasonable. *Id*. As the Supreme Court explained in *Wolfish*:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*Id*. at 559. The Fourth Amendment does not prohibit the search of an inmate's person, so long as the search is reasonable in scope, manner, and location; is reasonably related to a valid penological goal; and is not performed for a wrongful purpose, such as to humiliate or degrade a prisoner. *Id.*

9

As set forth *supra*, plaintiff alleges that defendants Vargas and Kather escorted him to his cell, asked him to remove his clothing, ordered him to remain naked while they searched his bunk area, and left the cell door open, allowing other prisoners to see him without his clothing. From these facts alone, the Court cannot say that the strip search in question was unreasonable. Plaintiff does not allege that either defendant touched him or conducted a visual body-cavity search. He does not allege that the search was unduly lengthy, nor does he claim that he was subjected to similar strip searches on any other occasion. In addition, plaintiff does not set forth any allegations that either defendant treated him in an abusive manner or made humiliating or degrading remarks to him during the search. Finally, plaintiff does not allege that there was no valid security reason for the search or that defendants conducted the search for an unlawful purpose.

The crux of plaintiff's claim is that the strip search was unreasonable because it was conducted inside his cell with the door open and that other prisoners could see him naked. While the Court questions whether there might have been a more private area to conduct the search, the Court finds plaintiff's allegation that the search was conducted in his cell with the door open is not, standing alone, sufficient to set forth a Fourth Amendment claim. Accordingly, plaintiff's Fourth Amendment claim against defendants Vargas and Kather in their individual capacities is dismissed pursuant to § 1915(e).

### D.    Fifth Amendment Claim

Plaintiff alleges generally that defendants violated his rights under the Fifth Amendment. Giving the Amended Complaint a liberal construction, it appears that plaintiff intends to assert a due process claim under that Amendment. The Fifth Amendment provides

that "no person shall be deprived of life, liberty or property, without due process of law." U.S. CONST. amend. V. In addition to setting the procedural minimum for deprivations of life, liberty or property, the Due Process Clause bars "certain governmental actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). It does not prohibit every deprivation by the government of a person's life, liberty or property. *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994). Only those deprivations which are conducted without due process are subject to suit. *Id*.

The Due Process Clause has a procedural component and a substantive one. It appears that plaintiff may be asserting both substantive and procedural due process claims. The Court will address each in turn.

### 1.    Substantive Due Process

Under the doctrine of substantive due process, various portions of the Bill of Rights have been incorporated into the Fourteenth Amendment's limits on the power of the states as being "implicit in the concept of ordered liberty." *Palko v. Connecticut*, 302 U.S. 319, 325 (1937) *overruled on other grounds by Benton v. Maryland*, 395 U.S. 784 (1969). Due process claims of this nature involve official acts which cause a deprivation of a substantive right specified in the Constitution or a federal statute. *Mertik v. Blalock*, 983 F.2d 1353, 1367 (6th Cir. 1993). In addition, under substantive due process, courts have invalidated laws or actions of government officials that "shock the conscience." *See United States v. Salerno*, 481 U.S. 739, 746 (1987). These actions are unconstitutional regardless of the procedural protections provided. *Parate v. Isibor*, 868 F.2d 821, 832 (6th Cir. 1989).

11

A citizen, however, does not suffer a constitutional deprivation every time he is subjected to some form of harassment by a government agency. *Id*. at 833. The conduct asserted must be "so severe, so disproportionate to the need presented, and such an abuse of authority as to transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights." *Id*.

Construed liberally, the Amended Complaint appears to allege a substantive due process claim based on the allegation that the strip search of plaintiff in his cell with the door open "shocks the conscience." This claim is based on the same facts as plaintiff's Fourth Amendment claim, discussed above. Where a specific Amendment provides an explicit source of constitutional protection against a particular sort of governmental conduct, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *See Graham v. Connor*, 490 U.S. 386, 395 (1989).

This Court has already considered plaintiff's claim in the context of his Fourth Amendment rights, *infra*. Therefore, his substantive due process claim is dismissed as duplicative of his Fourth Amendment claim.

## 2. Procedural Due Process

It is not entirely clear from his Amended Complaint, but it appears that plaintiff may be alleging that his procedural due process rights were violated when defendant Delgado failed to act on plaintiff's Informal Resolution and then later failed to provide plaintiff with another Informal Resolution form.

The Court finds this claim to be without merit. To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that a liberty or property

interest is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Thus, procedural due process analysis involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989). In other words, "the question of what process is due is relevant only if the inmate establishes a constitutionally protected interest." *Pickelhaupt v. Jackson*, No. 08-2310, 2010 WL 395929, at *2 (6th Cir. Feb. 4, 2010).

In the instant case, plaintiff's procedural due process claim is based on his allegation that he received no response to his first Informal Resolution and then was denied the opportunity to file another Informal Resolution relating to the strip search at issue. The Sixth Circuit has held that there is no inherent constitutional right to an effective prison grievance procedure. *See Argue v. Hofmeyer*, No. 03-1156, 2003 WL 22495834, at *2 (6th Cir. Oct. 30, 2003); *Walker v. Dep't of Corrections*, No. 04-1347, 2005 WL 742743, at *3 (6th Cir. Apr. 1, 2005). Thus, the Court finds that defendant Delgado's alleged failure to respond to plaintiff's Informal Resolution, or to allow him to file another Informal Resolution, is insufficient to demonstrate interference with a "liberty or property interest."

Accordingly, the Court finds that plaintiff has failed to state a claim upon which relief may be granted against defendant Delgado in her individual capacity for procedural due process violations. This claim is, therefore, dismissed pursuant to §1915(e).[4]

---

[4] After the Supreme Court's decision in *Minneci v. Pollard*, 132 S. Ct. 617 (2012), it is unclear whether a *Bivens* action should be implied for plaintiff's First, Fourth, and Fifth Amendment claims. However, the Court need not decide this issue at this time. Even assuming Plaintiff's constitutional claims are cognizable under *Bivens*, the Court would find them to be without merit for the reasons discussed *supra*.

## IV.    CONCLUSION

For the foregoing reasons, plaintiff's Fourth Amendment strip search claim against defendants Vargas and Kather in their individual capacities is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e). All other claims set forth in the Amended Complaint are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e). Further, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[5]

**IT IS SO ORDERED**.


Dated: March 28, 2012

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[5] 28 U.S.C. § 1915(a)(3) provides, in pertinent part: "An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith."

14